1  Sydney R. Gambee (Nevada Bar No. 14201)
   HOLLAND & HART LLP
2  9555 Hillwood Drive, 2nd Floor
   Las Vegas, NV 89134
3  Tel: 702.669.4600
   Fax: 702.669.4650
4  srgambee@hollandhart.com

5  *Attorneys for Plaintiffs*

6

7  **IN THE UNITED STATES DISTRICT COURT**
   **DISTRICT OF NEVADA, NORTHERN DIVISION**

8

9  MISSION HEALTHCARE SERVICES,          **Case No.:**
   LLC, a California limited liability company;
10 and HEALTHY LIVING AT HOME -          **COMPLAINT**
   CARSON CITY, LLC, a Nevada Limited
11 Liability Company,

12                 Plaintiffs,

13 v.

14 BATTLE BORN HOME HEALTH, LLC, a
   Nevada limited liability company; JESSICA
15 CONNANT (CRISP), an individual;
   ANGEL VASQUEZ BARNES, an
16 individual; and JOSEPH BARNES, an
   individual,

17                 Defendants.

18

19       Plaintiffs Mission Healthcare Services, LLC ("MHS"), and Healthy Living at Home –

20 Carson City, LLC ("HLH Carson City") (collectively "Mission"), by and through their

21 undersigned counsel, HOLLAND & HART LLP, file this Complaint for injunctive relief and

22 damages against Defendants, Jessica (Crisp) Conant ("Crisp"), Angel Vasquez Barnes ("A.

23 Barnes"), and Joseph Barnes ("J. Barnes"), (collectively the "Employee Defendants"), and

24 Battle Born Home Health, LLC ("Battle Born") (Battle Born and the Employee Defendants are

25 collectively referred to herein as the "Defendants") and hereby allege as follows:

26 ///

27

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

## PARTIES

1.     MHS is a California limited liability company with its principal place of business in San Diego, California.

2.     HLH Carson City is a Nevada limited liability company with its principal place of business in Carson City, Nevada.

3.     MHS and HLH Carson City transact business, provide home health care services in, and have employees Carson City Nevada, in addition to other locations across the United States.

4.     Upon information and belief, Battle Born is a Nevada limited liability company with its principal place of business located at 307 West Winnie Lane, # 5, Carson City, NV, 89703. Battle Born transacts business, provides home health care services, and has, and/or is preparing to have employees in Carson City, NV.

5.     Upon information and belief, Crisp is an individual residing in Carson City, Nevada, and is a former employee of Mission who is now employed by and performs services for Battle Born and/or has an ownership or equity interest therein.

6.     Upon information and belief, A. Barnes is an individual residing in Reno, Nevada, and is a former employee of Mission who is now employed by and performs services for Battle Born and/or has an ownership or equity interest therein.

7.      Upon information and belief, J. Barnes is an individual residing in Reno, Nevada, and is a former employee of Mission who is now employed by and performs services for Battle Born and/or has an ownership or equity interest therein.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action based upon 28 U.S.C. § 1331.

9.     Defendants are subject to the personal jurisdiction of this Court because they reside and operate businesses in the state of Nevada, and because they have transacted and are currently transacting business in the state of Nevada, which gives rise to their liability to

1    Plaintiffs.

2        10.    Venue is proper in the United States District Court for the District of Nevada

3    pursuant to 28 U.S.C. 1391(a), because Nevada is the state in which Defendants reside and

4    where a substantial part of the events or omissions giving rise to the claims occurred.

5                                    **FACTUAL BACKGROUND**

6        ***A.    Mission and the Home Health and Hospice Industry***

7        11.    HLH Carson City has provided personalized, life-changing home health and

8    hospice services in Nevada for many years.

9        12.    In 2021, Mission Healthcare Services, Inc., acquired HLH Carson City.

10       13.    When Mission Healthcare Services, Inc. acquired HLH Carson City, all the HLH

11   Carson City assets, liabilities, contracts, including without limitation contracts with its

12   employees, were assigned to MHS and related entities.

13       14.    Mission provides custom and personalized home health and hospice services

14   throughout several western states including Arizona, California, Idaho, Nevada, Oregon,

15   Washington, and Utah. Mission's platform in Utah includes skilled nursing services, physical

16   therapy, occupational therapy, speech therapy, home health aides, medical social workers, end

17   of life, and hospice care (the "Business").

18       15.    Mission employs a team of talented and caring health care professionals dedicated

19   to serving patients with the appropriate combination of clinical skill and personal care. Mission

20   has expended considerable time and resources identifying, recruiting, hiring, and training these

21   professionals.

22       16.    Mission operates the Business in an extremely competitive environment with a

23   number of national, regional, and local home health and hospice service companies within their

24   footprint vying for the opportunity to serve the same patient population.

25       17.    Mission has long-standing relationships with many referral sources, including but

26   not limited to physicians, hospitals, skilled nursing and care facilities ("Referral Sources"), and

27

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

has expended substantial money and time in developing and maintaining those relationships.

18.     In an effort to gain and maintain a competitive advantage, Mission expends substantial time, effort, and resources developing, maintaining, and creating, among other things: (i) institutional knowledge, processes, documentation, and know-how in both clinical services and marketing as well as confidential and proprietary information pertaining to its Referral Sources and its employees (collectively the "Business Information"); (ii) trade secrets, including techniques, strategies, and information about its Referral Sources, employees, and patients (the "Trade Secrets"); and (iii) relationships with employees, communities, Referral Sources, and third party vendors.

19.     Mission's Business requires that certain employees receive information, including without limitation, Business Information and/or Trade Secrets, related to its Business, employees, and Referral Sources for the purpose of continuing to build the Mission brand, advertising, and obtaining and retaining Referral Sources, patients, and employees.

20.     The process of developing a team of health care professionals, community partners, Referral Sources, and patients in this industry is lengthy, difficult, and expensive and requires Mission and its competitors to develop and maintain close personal relationships with Referral Sources, patients, and employees. In addition, Mission must has obtained a competitive advantage over competitors by having a clear understanding of each Referral Source, patient, and employee's needs and preferences, and developing and employing the most efficient and effective way to meet or exceed those needs. Such an understanding can only be developed through years of gathering information, developing relationships, and delivering service consistent with the unique needs of the patients and within the specifications of the Referral Sources. It would take a startup competitor many years to catch up with Mission.

21.     Mission operates in an extremely competitive industry in which its competitors, including Battle Born, would greatly benefit from obtaining Mission's Confidential Information. Accordingly, Mission takes care to safeguard and protect its Confidential

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

Information from disclosure or use by others.

**B.    *Battle Born's Operation in the Home Health and Hospice Market.***

22.    While it would typically take a long period of time and significant resources to build a home health company from scratch, the Employee Defendants together devised a scheme at least by November 2021 in which they planned to and did instantly launch a profitable home health company by improperly acquiring Mission's business, assets, and resources (including its employees) without having to pay for it.

23.    The Employee Defendants' scheme was to form Battle Born while they were still employed and being paid by Mission. On information and belief, to this end, while they were waiting for the needed licensing and approvals to be obtained before Battle Born could be operational and take patients, they began siphoning off Mission's Confidential Business Information and Trade Secrets and soliciting Mission's employees to leave Mission and work for Battle Born the moment it could open its doors.

24.    On information and belief, in breach of their fiduciary duties and duty of loyalty to Mission, each of the Employee Defendants accepted employment with and for Battle Born and began serving Battle Born's interests (not Mission's) while still employed by and receiving compensation from Mission.

25.    In other words, while the Employee Defendants were employed by and receiving compensation from Mission, and in direct breach of their several obligations to Mission, the Employee Defendants recruited Mission's employees and contractors, including each other, for Battle Born, even using Mission's resources to do so.

26.    Also contrary to their duties, the Employee Defendants spoke ill of Mission and discouraged employees and contractors from continuing employment with Mission.

27.    When a Mission employee expressed a willingness to work for Battle Born, he or she was instructed by the Employee Defendants to continue to take a paycheck from Mission until it was time for Battle Born to launch. This way, Mission was funding the scheme, and the

Employee Defendants had no financial risk as they waited for Battle Born to get the necessary state and federal approvals.

28.     The Employee Defendants also improperly utilized Mission's Business Information and Trade Secrets as they formed and launched Battle Born, including without limitation, to solicit Mission's employees and contractors and/or to solicit Mission's Referral Sources.

29.     Battle Born filed its initial State and Business License Application on February 2, 2022, listing Messers Brian Krug and Derek Beal as managers of the limited liability company.

30.     Upon information and belief, Battle Born provides or is planning to provide home health care services, including skilled nursing, physical therapy, occupational therapy, speech therapy, social services, and CNS services in Carson City, Minden, Gardnerville, and Dayton, Nevada, as a direct competitor with Mission and its Business.

31.     Through their scheme, Defendants have solicited and hired multiple Mission employees and contractors, though some remain employed by Mission as instructed. It is Defendants' intent to utilize Mission's Business Information and Trade Secrets and reap the benefits of their improper solicitation of Mission's employees and contractors, in order to quickly take Battle Born from the start-up phase to a fully functioning competitor of Mission.

**C.     *Mission's Business Information and Trade Secrets.***

32.     Mission possesses Business Information, which includes but is not limited to, information about Mission, its Referral Sources, employees, and clients; information about the Business, including without limitation its operations and financial information; future plans of every type; pricing schedules, lists, promotions, and products; marketing and sales strategies including without limitation information and strategy regarding Referral Sources; concepts, designs, models, strategies, procedures, ideas, and know how; employee and patient personally identifiable information; agreements and contract terms; business methods; all information employees may obtain, prepare or analyze during the course of employment; research materials;

memoranda; correspondence or other documentation; payroll and compensation information; personnel files including without limitation performance information; information concerning compensation of third parties, consultants, and vendors; and business models.

33.    Mission also possesses Trade Secrets, which include but are not limited to, data, formulas and processes related to strategic alliances and relationships with vendors, Referral Sources, patients, employees, and third parties, and including without limitation, confidential techniques, strategies, and information about Referral Sources, employees, and patients.

34.    Mission's Business Information and Trade Secrets are not generally known to the public or within the industry and have independent economic value because the information is not readily ascertainable by independent investigation.

35.    Mission takes reasonable precautions to ensure confidentiality of its Business Information and Trade Secrets. Such efforts include, among others: (i) implementing policies limiting access to the such information; (ii) requiring employees to acknowledge their receipt of an employee handbook; (iii) entering into non-disclosure or confidentiality agreements with its employees; (iii) restricting employees' physical and technological access to the subject information; (iv) securing the information's physical and electronic storage; and (v) limiting distribution of the information only to those employees who need the information to perform their specific job functions.

36.    For example, Mission maintains password protections, trains employees to safeguard information, and operates in a culture and environment which requires employees to understand and take seriously the need to keep all Business Information and Trade Secrets confidential.

37.    Because the Employee Defendants occupied key positions within the Mission organization, at all material times during their employment, the Employee Defendants were given access to and were permitted to use Mission's Business Information and/or Trade Secrets.

38.     In addition to the steps outlined above, Mission required the Employee Defendants to contractually agree to refrain from describing, disclosing, misappropriating, publishing, taking, transmitting, or using Mission's Business Information or Trade Secrets for any purpose other than to further Mission's Business.

39.     Specifically, HLH Carson City required employees to sign the Employee Acknowledgement and Receipt of Healthy Living at Home Handbook form (the "HLH Carson City Handbook Acknowledgement") whereby the Employee Defendants acknowledged receipt of the Healthy Living Network Employee Handbook (the "HLH Carson City Handbook"), the Non-Disclosure and Assignment of Inventions Agreement (the "HLH Carson City NDA"), and the Code of Conduct (the "HLH Carson City Code of Conduct") (collectively, the "HLH Carson City Employment Agreements").

40.     By signing the HLC Carson City Handbook Acknowledgement, the Employee Defendants agreed that they "would be responsible for reading[,]" had read, and would observe and abide by the conditions of employment, policies, and rules contained in the HLH Carson City Handbook, as well as other HLH Carson City policies, such as those prohibiting disclosure of HLH Carson City's Business Information and Trade Secrets.[1]

41.     The Employee Defendants also each agreed that the HLH Carson City Handbook was an accurate representation of his or her obligations to HLH Carson City.

42.     By signing the HLH Carson City Handbook Acknowledgement, the Employee Defendants each agreed that they would "have access to sensitive information that [HLH Carson City does] not share with [its] competitors, the public, or even other employees who do not need to know the information to do their jobs. This information belongs to the Company. [Employees] may not use it for personal gain or for the benefit of someone else, like another employer or one of [HLH Carson City's] competitors. The information is provided to

---

[1] Crisp signed the HLH Handbook acknowledgement on July 17, 2018, J. Barnes signed it on August 17, 2018, and A. Barnes signed it on August 10, 2018.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

[employees] to use in performing work for the Company. Except as permitted by law or as necessary in the regular course of your duties . . . [employees] may not divulge confidential information to any third party without express written permission from the President of the Company."

43.     By signing the HLH Carson City Handbook Acknowledgement, the Employee Defendants also agreed that if they left "employment with the Company for any reason" each would "continue to treat as private and privileged any such sensitive information" and would not "use, reveal, or communicate to any person or entity any of this information without the written approval of the Company."

44.     By signing the HLH Carson City Handbook Acknowledgement, the Employee Defendants also agreed that "[t]heft, misappropriation, or unauthorized possession or use of property, documents, records, or funds belonging to the Company, or any patient or employee, removal of the same from Company premises without authorization," "[d]ivulging confidential information of any kind to any unauthorized person(s) or without an official need-to know requirement," or "[o]btaining unauthorized confidential information pertaining to patients or employees"[2] constituted misconduct and that upon learning about any such misconduct, including but not limited to the use or disclosure of the HLH Carson City's Business Information or Trade Secrets, the Company "will pursue legal remedies" against each of them.

45.     By signing the HLH Carson City NDA, each of the Employee Defendants agreed that during their employment, and at "all times thereafter" each would "hold in the strictest confidence and [would] not use, except for the benefit of the Company, or disclose to any person, firm, or corporation, without written authorization from the Company's President or a company officer, any [Confidential] Information, including, without limitation, information concerning project development and production, marketing plans and strategy, business plans and projections, finances, operations, billing methods and client and contact lists or other

---

[2] *Id.* at p. 24.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

subject matter pertaining to any business of the Company or any of its clients as defined above."[3]

46.     By signing the HLH Carson City NDA, each of the Employee Defendants also agreed that they would "hold in the strictest confidence and [would] not use, except for the benefit of the Company, or disclose to any person, firm, or corporation, without written authorization from the Company's President or a company officer, any [Business Information or Trade Secret] Information, including, without limitation, information concerning project development and production, marketing plans and strategy, business plans and projections, finances, operations, billing methods and client and contact lists or other subject matter pertaining to any business of the Company or any of its clients as defined above."

47.     By signing the HLH Carson City NDA, each of the Employee Defendants also agreed that they would "maintain in secrecy all [Business Information and Trade Secret] Information and other confidential and/or proprietary information relating to the Company and its officers and/or directors and [would] use such Information only in the course of performing [their] duties" for the Company, and that they would "maintain in trust all such [Business Information and Trade Secret] Information as the Company's property, including but not limited to, all documents, work papers, telephone directories, notes, and any and all copies thereof" in their possession or under their control.

48.     By signing the HLH Carson City NDA, each of the Employee Defendants also agreed that they would "return to the Company any and all equipment, computer, disks, notes, notebooks, documents, memoranda, proposals, reports, files, forms, samples, books, correspondence, lists, or other written records affecting or relating to the Company, or created by [the Employee Defendant] during his or her employment with the Company, and any and all copies thereof" which were in the Employee Defendant's possession.

---

[3] Crisp signed the HLH Carson City NDA on July 17, 2018, A. Barnes signed it on August 1, 2018, and J. Barnes signed it on August 12, 2018.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

49.     By signing the HLH Carson City NDA, each of the Employee Defendants also agreed that they would not "at any time, either during the term of employment or for a period of one (1) year thereafter . . . whether as an owner, partner, shareholder, agent, employee, creditor, or otherwise, directly or indirectly, solicit, interfere with, divert, disrupt or attempt to disrupt any present business relationship, either contracted or otherwise, between the Company, its affiliates, successors in interest, or assigns, and any merchant, customer, advertiser, client or employee of the Company, its affiliates, successors in interest, or assigns."

50.     By signing the HLH Carson City NDA, each of the Employee Defendants also agreed that they would not "at any time, either during the term of employment or for a period of one (1) year thereafter, . . ., whether as an owner, partner, shareholder, agent, employee, creditor, or otherwise, directly or indirectly, solicit, interfere with, divert, disrupt or attempt to disrupt any business relationship, either contracted or otherwise, between the Company, its affiliates, successors in interest, or assigns, and any prospective merchant, customer, advertiser or client with whom the Company, its affiliates, successors in interest, or assigns have initiated a business contact."

51.     By signing the HLH Carson City Code of Conduct, each of the Employee Defendants agreed that he or she would refrain from "obtaining any personal benefit by virtue of [their] employment" with HLH Carson City, that they would "disclose to the Corporate Compliance Officer any financial interest, ownership interest or any other relationship" that they had with "the Company's customers, vendors, or competitors," that they would not use HLH Carson City Business Information or Trade Secrets for their "own personal benefit or for the benefit of any other person or entity, except the Company while employed by the Company or at any time thereafter," and that they would "promptly report all violations or suspected violations of [the] Standards of Conduct by other Employees verbally to the Corporate Compliance Officer or the compliance hotline or in writing to the Corporate Compliance

Officer."[4]

52.    In addition to the HLH Carson City Employment Agreements, as a requirement of their employment, each of the Employee Defendants executed a Non-Disclosure and Confidentiality Agreement with Mission (the "Mission NDA").

53.    By signing the Mission NDA, the Employee Defendants agreed that they would "maintain [Mission] Confidential Information in strictest confidence for the sole and exclusive benefit of [Mission]" and that they would not, "without prior written approval" from Mission "publish, copy, or otherwise disclose to others, or permit the use by others for their benefit or to the detriment of [Mission], any Confidential Information" that belongs to Mission and that they would "return any and all records, notes, and other written, printed, or tangible materials" in their possession to Mission immediately.[5]

> ### D.    While The Employee Defendants Worked for Mission They, Conspired to Leave Mission to Operate and a Competing Business using Mission's Business Information and Trade Secrets to Wrongfully Recruit Mission Employees, Referral Sources and Patients.

54.    Crisp was employed as the Administrator of HLH Carson City between approximately July 7, 2016, and January 19, 2022.

55.    As the Administrator, Crisp managed HLH Carson City's entire business operation and was the chief administrative employee at HLH Carson City. The owners and officers of Mission extended substantial trust and authority to Ms. Crisp, and she was charged with maintaining and overseeing the daily operations and quality of HLH Carson City.

56.    To perform these tasks, Crisp was required to perform numerous key corporate initiatives, including to, among other things, development of company and organizational goals, implement health regulations and standards, promote and assist with interdepartmental

---

[4] Crisp signed the HLH Code of Conduct on July 17, 2018, A. Barnes signed it on August 1, 2018, and J. Barnes signed it on August 12, 2018.

[5] Crisp signed the Mission NDA on November 19, 2021, J. Barnes signed it on December 2, 2021, and A. Barnes signed it on December 2, 2021.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

communication and cooperation, assist in the development of employees through recruitment, retention, training, motivation, and rewards, establish and ensure implementation of performance goals, assist with the long term planning and implementation of strategic educational, patient care, research, revenue, and public relations programs, manage fiscal activities of the agency, coordinate special departmental activities, monitor record systems, develop policies, develop and enhance employee performance and fulfilment, oversee care delivery and patient outcomes, ensure compliance with federal, state, and local laws and standards.

57.   The performance of these duties provided Crisp with access to Mission business information, including Business Information and Trade Secret Information on a daily basis.

58.   J. Barnes was employed with Mission from August 12, 2018, through January 19, 2022, as a registered nurse case manager.

59.   As a registered nurse case manager, J. Barnes was responsible for, among other things, working with and managing Mission's clinical staff, working with software programs including having key access to same, coordinating patient care and understanding and planning patient care for Mission's patients including working directly with Mission's developed referral sources, coordinating employee schedules and patient visits, supervising LPN and HHA field staff, providing education to employees regarding Mission's policies, practices and care standards, being familiar with and follow Medicare and Medicaid regulations, observing, assessing, and documenting patient symptoms and progress, and performing home care visits as needed.

60.   The performance of these duties allowed J. Barnes to gain access to Mission's information, including Business Information and Trade Secret information and develop direct relationships with Mission's clinical employees and referral sources.

61.   A. Barnes was employed with Mission from August 1, 2018, through January 19, 2022, as a certified nurse assistant.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

62.     As a Certified Nurse Assistant, A. Barnes was responsible for, among other things, assisting in the implementation of patient care plans, performing tasks assigned by his supervising RN, charting, observing and reporting safety hazards and other issues seen in patients' homes, and other duties assigned by an RN.

63.     The performance of these duties allowed A. Barnes to gain access to Mission Business Information and Trade Secret information and develop direct relationships with Mission's clinical employees, including RNs, and its patients.

64.     Upon information and belief, Crisp began providing services and performing actions for Battle Born's benefit during her employment with Mission and while being paid by Mission.

65.     Upon information and belief, Crisp affirmatively hid from Mission that she had formed and begun performing services for Battle Born, a direct competitor of Mission, while she remained employed by and received paychecks from Mission.

66.     Upon information and belief, A. Barnes and J. Barnes were each aware that Crisp had formed and begun providing services for Battle Born but failed to disclose that information to Mission.

67.     Upon learning that Crisp had, in violation of her contractual obligations to Mission, not only begun forming a competing home health agency while employed by Mission but was doing so utilizing Mission's resources including Mission's Business Information and Trade Secret information and was negatively interfering with Mission's business and at-will employment relationships, Mission terminated Crisp's employment.

68.     Within thirty minutes of terminating Crisp's employment, A. Barnes and J. Barnes each resigned without notice and effective immediately.

69.     Upon information and belief, Crisp began working for Battle Born during her employment with Mission. Upon information and belief, A. Barnes and J. Barnes performed some actions or services for Battle Born during their employment with Mission and became

employees of Battle Born immediately after their employment with Mission ended.

70.     Upon information and belief, each of the Employee Defendants conspired with one another and with Battle Born to form and carry out a plan to use Mission's Business Information and Trade Secrets to improperly and unlawfully solicit Mission's employees, Referral Sources and patients to terminate or reduce their work with Mission in favor of Battle Born.

71.     Upon information and belief, during and since the termination of their employment with Mission and the commencement of their employment with Battle Born, each of the Employee Defendants, in coordination with and with the assistance of Battle Born, have, in violation of their HLH Carson City Employment Agreements and the HLH Carson City NDA, used Mission's Business Information and Trade Secrets to recruit and hire Mission employees to work for Battle Born.

72.     Battle Born is now licensed and operating and is a direct competitor of Mission.

73.     Upon information and belief, since the Employee Defendants began working for Battle Born, Defendants have continued to use Mission's Business Information and Trade Secrets to contact and recruit Mission employees and/or Mission's Referral Sources to generate business.

74.     Upon information and belief, Defendants have used and continue to use Mission's Business Information and Trade Secrets after the Employee Defendants' resignation for the benefit of Battle Born and to Mission's detriment.

75.     The Employee Defendants' continued use of Mission's Business Information and Trade Secrets, and their transmission of that information to Battle Born after their resignation from Mission, and for the benefit of Battle Born, violates their common-law and contractual obligations to Mission.

76.     Upon information and belief, Defendants continue to solicit Mission employees, including through the use of Mission's Business Information and Trade Secrets.

1

*E.*      *Irreparable Harm to Mission.*

2

77.     Defendants' willful misappropriation and continued use of Mission's Business

3

Information and Trade Secrets to improperly solicit and/or market to Mission's Referral

4

Sources, patients, and/or employees has irreparably harmed and continues to irreparably harm

5

Mission.

6

78.     In addition, the misappropriation of Mission's Business Information and Trade

7

Secrets violates the public's interest in the safeguarding of the confidential, proprietary, and

8

trade secret information of employers and businesses.

9

79.     The restrictions on the misappropriation of Mission's Trade Secrets and Business

10

Information are not contrary to applicable public policy.

11

80.     Mission has no adequate remedy at law to protect itself from Defendants' wrongful

12

use and/or disclosure of its Business Information and Trade Secrets.

13

*F.*      *Defendants Will Not Suffer Undue Hardship.*

14

81.     Enforcement of the protections afforded by the Uniform Trade Secrets Act will

15

not cause undue hardship to Defendants because it is very narrow and limited in scope and does

16

not place a substantial limitation on Defendants' opportunities for employment or from

17

maintaining their livelihood; nor does it inhibit Battle Born from fairly competing in the

18

marketplace.

19

20

**FIRST CAUSE OF ACTION**
**(State Misappropriation of Trade Secrets)**
**(NRS. § 600A.010 *et seq.*)**
**(Against All Defendants)**

21

82.     Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this

22

Complaint as though fully set forth herein.

23

83.     Mission possesses valuable Trade Secret information, including but not limited to

24

various techniques, strategies, and information about its Referral Sources, employees, and

25

patients.

26

///

27

28

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

84.     The Employee Defendants had access to, and acquired, Mission's Trade Secrets as a result of their respective relationships with Mission and under circumstances in which each Employee Defendant was vested with extreme trust and confidence by Mission, and under which each Employee Defendant had a duty to maintain the secrecy of the information and limit its use.

85.     Through the Employee Defendants' conduct, Battle Born gained access to, and acquired, Mission's Trade Secrets which were not previously known to it.

86.     Each of the Defendants knew that the Trade Secret information Mission provided to the Employee Defendants comprised Mission's Trade Secrets.

87.     Mission has invested significant money and other resources into developing and protecting the Trade Secrets.

88.     Mission enjoys an advantage over existing and would-be competitors in the home health and hospice industry, including Battle Born, by virtue of the Trade Secrets, which have been developed and/or compiled over years of hard work and the substantial investment of money and resources.

89.     Mission derives significant competitive and economic benefits insofar as the Trade Secrets are not readily available to the public and are not readily ascertainable or duplicated by others.

90.     Mission has taken reasonable steps to safeguard the secrecy of the Trade Secrets.

91.     The Employee Defendants were each contractually forbidden from possessing and using Mission's Trade Secrets for the benefit of themselves or any entity other than Mission.

92.     Despite these contracts, the Employee Defendants have each used, and provided their co-Defendants with, Mission's Trade Secrets which have been utilized by Defendants to compete against Mission.

93.     Defendants have used the misappropriated Trade Secrets to start, operate and grow a competing business in the same geographic market as Mission, and, on information and belief,

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

to solicit and recruit Mission's employees and Referral Sources to Battle Born.

94.    Defendants have used and intend to use Mission's Trade Secrets for their economic benefit and to the detriment of Mission, and without compensation to Mission.

95.    Defendants' disclosure and improper use of Mission's Trade Secrets has provided Defendants with an improperly attained, economically valuable and unfair advantage.

96.    Defendants' disclosure and improper use of Mission's Trade Secrets has resulted in significant and irreparable harm to Mission.

97.    Defendants' misappropriation of Mission's Trade Secrets has directly and proximately caused damages to Mission. Mission is therefore entitled to an award of actual damages in an amount to be proven at trial.

98.    Because Defendants' misappropriation of Mission's Trade Secrets has been and continues to be conducted in a willful and malicious manner, Mission is entitled to exemplary damages under NRS § 600A.050(2) in an amount not exceeding two times the award of damages as well as to its attorneys' fees under NRS § 600A.060(3).

99.    At all material times, the above-described actions have caused and are continuing to cause irreparable injury to Mission, for which Mission has no adequate remedy at law, and will continue to offend unless enjoined.

100.    Mission is entitled to injunctive relief against Defendants to prevent further damage and harm to Mission.

101.    Mission is further entitled to monetary damages arising from any unjust enrichment caused by Defendants' misappropriation of its Trade Secrets in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Federal Misappropriation of Trade Secrets)**
**(18 U.S.C. § 1836 *et seq.*)**
**(Against All Defendants)**

102.    Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

103.    The Employee Defendants had access to, and acquired, Mission's Trade Secret information as a result of their respective relationships with Mission and under circumstances in which each Employee Defendant was vested with extreme trust and confidence by Mission and under which each Employee Defendant had a duty to maintain the secrecy of the information and limit its use.

104.    The Employee Defendants each knew that the information Mission provided to them comprised Mission's Trade Secrets.

105.    Mission has invested significant money and other resources into developing and protecting the Trade Secrets.

106.    Mission enjoys an advantage over existing and would-be competitors in the home health and hospice industry by virtue of the Trade Secrets, which have been developed and/or compiled over years of hard work and the substantial investment of money and resources.

107.    Mission derives significant competitive and economic benefits insofar as the Trade Secrets are not readily available to the public and are not readily ascertainable or duplicated by others.

108.    Mission has taken steps designed to safeguard the secrecy of the Trade Secrets, including without limitation, enacting written policies limiting access and use of the Trade Secrets; requiring the receipt, review and execution of the HLH Carson City Handbook, the HLH Carson City NDA, the HLH Carson City Code of Conduct, and the Mission NDA, each of which contain such policies, and by requiring employees to review, understand, and accept various contractual obligations and agreements as a condition of employment and/or continued employment.

109.    The Employee Defendants were provided restricted access to Mission's trade secrets.

110.    The Employee Defendants have used, and provided Battle Born with, Mission's Trade Secrets which have been utilized by Defendants to compete against Mission.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

111.    Defendants have used the misappropriated Trade Secrets to start, rejuvenate, operate and grow a competing business in the same geographic market as Mission, and to solicit and recruit Mission's employees to Battle Born.

112.    Defendants have used and intend to use Mission's Trade Secrets for their economic benefit to the detriment of Mission, and without compensation to Mission.

113.    Defendants' disclosure and improper use of Mission's Trade Secrets have resulted in significant and irreparable harm to Mission.

114.    Defendants' disclosure and improper use of Mission's Trade Secrets have provided Mission's competitors with an improperly attained, economically valuable and unfair advantage.

115.    Defendants' misappropriation of Mission's Trade Secrets has directly and proximately caused damages to Mission. Mission is therefore entitled to an award of actual damages in an amount to be proven at trial.

116.    Because Defendants' misappropriation of Mission's Trade Secrets has been and continues to be conducted in a willful and malicious manner, Mission is entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) in an amount not exceeding two times the award of damages as well as to its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

117.    At all material times, the actions described above have caused and are continuing to cause irreparable injury to Mission, for which Mission has no adequate remedy at law, and Defendants will continue to offend unless enjoined.

118.    Mission is entitled to injunctive relief against Defendants to prevent further damage and harm to HLH Carson City.

**THIRD CAUSE OF ACTION**
**(Breach of Contract – HLH Carson City Handbook)**
**(Against the Employee Defendants)**

119.    Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

120.    Forming an enforceable contract with Mission, each of the Employee Defendants acknowledged their receipt, understanding and commitment to follow the mandates contained in the HLH Carson City Handbook, which includes HLH Carson City's policies prohibiting employees from accessing, using, disclosing, publishing, or copying the Business Information or Trade Secrets for any purpose other than a HLH Carson City business-related purpose.

121.    Pursuant to the HLH Carson City Handbook, the Employee Defendants agreed, among other things, to only use HLH Carson City's Business Information and Trade Secrets in the performance of their HLH Carson City employment and for HLH Carson City's benefit, and not for any other purpose.

122.    The Employee Defendants also agreed not to use HLH Carson City's Business Information and Trade Secrets for personal purposes or for any other purpose after their separation of employment from HLH Carson City, regardless of the reason for the separation.

123.    The HLH Carson City Handbook further prohibits the Employee Defendants from soliciting HLH Carson City's employees or Referral Sources for any purpose outside of HLH Carson City's Business.

124.    In exchange for valuable consideration including continued employment, the Employee Defendants agreed to abide by terms of the HLH Carson City Handbook.

125.    HLH Carson City has performed all of its obligations under the HLH Carson City Handbook.

126.    The Employee Defendants breached their obligations by, among other things:

a.      Accessing or using HLH Carson City's Business Information or Trade Secrets without authorization during and after employment with HLH Carson City for their own benefit and for Battle Born's benefit, including but not limited to for the purpose of soliciting and recruiting HLH Carson City's employees and/or Referral Sources away from HLH Carson City.

b.      Disclosing Business Information and Trade Secret information to those who are not authorized to receive such information, including Battle Born, both during and after

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

1  employment with HLH Carson City;

c.     Revealing or misusing HLH Carson City's Business Information and Trade Secrets to assist Battle Born during and after their employment at HLH Carson City; and

d.     On information and belief Soliciting HLH Carson City employees to reduce or eliminate their work for HLH Carson City and to induce them to breach the duties of care and loyalty owed to HLH Carson City.

127.     As a result of the Employee Defendants' breaches of their contractual obligations under the HLH Carson City Handbook, HLH Carson City has been injured and damaged in an amount to be proven at trial plus applicable interest, late fees, attorney fees, and costs of collection.

128.     HLH Carson City is also entitled to injunctive relief against the Employee Defendants to prevent further damages and harm to HLH Carson City.

**FOURTH CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing – HLH Carson City Handbook)**
**(Against the Employee Defendants)**

129.     Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

130.     The HLH Carson City Handbook is a valid and enforceable contract between HLH Carson City and its employees and former employees, including the Employee Defendants.

131.     There is an implied covenant in the HLH Carson City Handbook that inheres in every written and oral agreement that requires HLH Carson City employees to act in a manner consistent with the parties' intent and so that HLH Carson City can realize the benefit of its bargain. The Employee Defendants' employment with HLH Carson City was intended to build up HLH Carson City, establish a long-term employee base, increase referrals, fight off competition, and protect HLH Carson City's position in the market, including by protecting its Business and economic advantages. The benefit of the Employee Defendants' efforts for HLH Carson City were intended to be long-lasting and extend beyond the term of their employment,

22

and to be for the exclusive benefit of HLH Carson City and not for the Employee Defendants' retention or use after employment.

132.    HLH Carson City performed all of its obligations under the MHS Handbook.

133.    The Employee Defendants breached the covenant of good faith and fair dealing both during and after employment by, on their own behalf and on behalf of Battle Born, (a) utilizing HLH Carson City resources and opportunities, including without limitation its Business Information and Trade Secrets; (b) soliciting and recruiting HLH Carson City's employees to work for them at Battle Born, HLH Carson City's direct competitor; (c) on information and belief, soliciting HLH Carson City's relationships and Referral Sources for their personal benefit and Battle Born's benefit; (d) preparing to compete using Mission's resources, and actually competing with HLH Carson City while still employed and being paid by HLH Carson City; and (e) using HLH Carson City's trust and confidence, and HLH Carson City's know-how and Business Information, to prepare to compete and actually compete against HLH Carson City, thereby depriving HLH Carson City of the value of the employment services for which they were hired.

134.    HLH Carson City has been damaged and continues to suffer and experience damages resulting from the Employee Defendants' breaches of the implied covenant of good faith and fair dealing which is inherent to the HLH Carson City Handbook in an amount to be determined at trial plus applicable interest, late fees, attorney fees, and costs of collection.

135.    HLH Carson City is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to HLH Carson City.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract – HLH Carson City NDA)**
**(Against the Employee Defendants)**

136.    Plaintiffs hereby repeat, reallege and reincorporate all preceding paragraphs of this Complaint as though fully set forth herein.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

137.   As a term of Employment, the Employee Defendants each executed the HLH Carson City NDA.

138.   The HLH Carson City NDA constitutes a valid contract between HLH Carson City and the Employee Defendants.

139.   In exchange for consideration including continued employment, the Employee Defendants each individually agreed to abide by terms of the HLH Carson City NDA.

140.   HLH Carson City performed all of its obligations under the HLH Carson City NDA.

141.   As more fully described above, the Employee Defendants each breached the HLH Carson City NDA by failing to abide by its terms by, among other things, failing to maintain the confidentiality of HLH Carson City's Business Information and Trade Secrets both during and after their HLH Carson City employment, making use Business Information and Trade Secrets for their own benefit and for the benefit of others and third parties (to HLH Carson City's detriment), and by disclosing HLH Carson City's Business Information and Trade Secrets to third parties including the other Defendants.

142.   As a result of the Employee Defendants' actions, HLH Carson City has suffered and will continue to suffer damages in an amount to be determined at trial plus applicable interest, late fees, attorney fees, and costs of collection.

143.   HLH Carson City is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to HLH Carson City.

### SIXTH CAUSE OF ACTION
**(Breach of the Covenant of Good Faith and Fair Dealing – HLH Carson City NDA)**
**(Against the Employee Defendants)**

144.   Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

145.   The HLH Carson City NDA is a valid and enforceable contract between HLH Carson City and its employees and former employees, including the Employee Defendants.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

146.    There is an implied covenant in the HLH Carson City NDA that inheres in every written and oral agreement that requires that HLH Carson City employees act in a manner consistent with the parties' intent and so that HLH Carson City can realize the benefit of its bargain. The Employee Defendants' employment with HLH Carson City was intended to build up HLH Carson City, establish a long-term employee base, increase referrals, fight off competition, and protect HLH Carson City's position in the market, including by protecting its Business and economic advantages. The benefit of the Employee Defendants' efforts for HLH Carson City were intended to be long-lasting and extend beyond the term of their employment, and to be for the exclusive benefit of HLH Carson City and not for the Employee Defendants' retention or use after employment.

147.    HLH Carson City performed all of its obligations under the HLH Carson City NDA.

148.    The Employee Defendants each independently breached the covenant of good faith and fair dealing both during and after employment by, on their own behalf and on behalf of Battle Born by (a) utilizing HLH Carson City's resources and opportunities, including without limitation its Business Information and Trade Secrets; (b) soliciting and recruiting HLH Carson City's employees to work for them at Battle Born, HLH Carson City's direct competitor in violation of their contractual agreements with HLH Carson City; (c) on information and belief, soliciting HLH Carson City's relationships and Referral Sources for their personal benefit and Battle Born's benefit; (d) preparing to compete, using Mission's resources, with HLH Carson City while still employed with and being paid by HLH Carson City; and (e) using HLH Carson City's Business Information and Trade Secrets to prepare to and to compete against HLH Carson City, thereby HLH Carson City of the value of the employment services for which they were hired and being paid.

149.    HLH Carson City has been damaged and continues to suffer and experience damages resulting from the Employee Defendants' breach of the implied covenant of good faith

and fair dealing which is inherent to the HLH Carson City NDA in an amount to be determined at trial, plus applicable interest, late fees, attorney fees, and costs of collection.

150.    HLH Carson City is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to HLH Carson City.

### SEVENTH CAUSE OF ACTION
**(Breach of Contract – HLH Carson City Code of Conduct)**
**(Against the Employee Defendants)**

151.    Plaintiffs hereby repeat, reallege and reincorporate all preceding paragraphs of this Complaint as though fully set forth herein.

152.    As a term of Employment, the Employee Defendants each executed the HLH Carson City Code of Conduct.

153.    The HLH Carson City Code of Conduct constitutes a valid contract between HLH Carson City and the Employee Defendants.

154.    In exchange for consideration including continued employment, the Employee Defendants each individually agreed to abide by terms of the HLH Carson City Code of Conduct.

155.    HLH Carson City performed all of its obligations under the HLH Carson City Code of Conduct.

156.    As more fully described above, the Employee Defendants each breached the HLH Carson City Code of Conduct by failing to abide by its terms by, among other things, receiving a personal benefit by virtue of their employment with HLH Carson City, by failing to notify HLH Carson City of their own personal interest and/or relationship with Battle Born, a competitor of HLH Carson City, their use of HLH Carson City's Business Information and Trade Secrets for their own personal benefit and for the benefit of third parties, and their failure to disclose their knowledge of the other Employee Defendants' violations of the Code of Conduct to HLH Carson City.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

157. As a result of the Employee Defendants' actions, HLH Carson City has suffered and will continue to suffer damages in an amount to be determined at trial plus applicable interest, late fees, attorney fees, and costs of collection.

158. HLH Carson City is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to HLH Carson City.

## EIGHTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing – HLH Carson City Code of Conduct)
### (Against the Employee Defendants)

159. Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

160. The HLH Carson City Code of Conduct is a valid and enforceable contract between HLH Carson City and its employees and former employees, including the Employee Defendants.

161. There is an implied covenant in the HLH Carson City Code of Conduct that inheres in every written and oral agreement that requires that HLH Carson City employees act in a manner consistent with the parties' intent and so that HLH Carson City can realize the benefit of its bargain. The Employee Defendants' employment with HLH Carson City was intended to build up HLH Carson City, establish a long-term employee base, increase referrals, fight off competition, and protect HLH Carson City's position in the market, including by protecting its Business and economic advantages. The benefit of the Employee Defendants' efforts for HLH Carson City were intended to be long-lasting and extend beyond the term of their employment, and to be for the exclusive benefit of HLH Carson City and not for the Employee Defendants' retention or use after employment.

162. HLH Carson City performed all of its obligations under the HLH Carson City Code of Conduct.

163. The Employee Defendants each independently breached the covenant of good faith and fair dealing both during and after employment by, on their own behalf and on behalf

of Battle Born by, among other things, terms by, among other things, receiving a personal benefit by virtue of their employment with HLH Carson City, by failing to notify HLH Carson City of their own personal interest and/or relationship with Battle Born, a competitor of HLH Carson City, their use of HLH Carson City's Business Information and Trade Secrets for their own personal benefit and for the benefit of third parties, and their failure to disclose their knowledge of the other Employee Defendants' violations of the Code of Conduct to HLH Carson City.

164.    HLH Carson City has been damaged and continues to suffer and experience damages resulting from the Employee Defendants' breach of the implied covenant of good faith and fair dealing which is inherent to the HLH Carson City NDA in an amount to be determined at trial plus applicable interest, late fees, attorney fees, and costs of collection.

165.    HLH Carson City is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to HLH Carson City.

**NINTH CAUSE OF ACTION**
**(Breach of Contract – Mission NDA)**
**(Against the Employee Defendants)**

166.    Plaintiffs hereby repeat, reallege and reincorporate all preceding paragraphs of this Complaint as though fully set forth herein.

167.    As a term of Employment, the Employee Defendants each executed the Mission NDA.

168.    The Mission NDA constitutes a valid contract between Mission and the Employee Defendants.

169.    In exchange for consideration including continued employment, the Employee Defendants each individually agreed to abide by terms of the Mission NDA.

170.    Mission performed all of its obligations under the Mission NDA.

171.    As more fully described above, the Employee Defendants each breached the Mission NDA by failing to abide by its terms by, among other things, failing to maintain the

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

confidentiality of Mission's Business Information and Trade Secrets both during and after their Mission employment, making use Business Information and Trade Secrets for their own benefit and for the benefit of others and third parties (to Mission's detriment), and by disclosing Mission's Business Information and Trade Secrets to third parties including the other Defendants.

172.    As a result of the Employee Defendants' actions, Mission has suffered and will continue to suffer damages in an amount to be determined at trial plus applicable interest, late fees, attorney fees, and costs of collection.

173.    Mission is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to Mission.

## TENTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing – Mission NDA)
### (Against the Employee Defendants)

174.    Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

175.    The Mission NDA is a valid and enforceable contract between Mission NDA and its employees and former employees, including the Employee Defendants.

176.    There is an implied covenant in the Mission NDA that inheres in every written and oral agreement that requires that Mission NDA employees act in a manner consistent with the parties' intent and so that Mission NDA can realize the benefit of its bargain. The Employee Defendants' employment with Mission NDA was intended to build up Mission, establish a long-term employee base, increase referrals, fight off competition, and protect Mission position in the market, including by protecting its Business and economic advantages. The benefit of the Employee Defendants' efforts for Mission were intended to be long-lasting and extend beyond the term of their employment, and to be for the exclusive benefit of Mission and not for the Employee Defendants' retention or use after employment.

177.    Mission performed all of its obligations under the Mission NDA.

178.    The Employee Defendants each independently breached the covenant of good faith and fair dealing both during and after employment by, on their own behalf and on behalf of Battle Born by (a) utilizing Mission's resources and opportunities, including without limitation its Business Information and Trade Secrets; (b) soliciting and recruiting Mission's employees to work for them at Battle Born, Mission's direct competitor in violation of their contractual agreements with Mission; (c) soliciting Mission's relationships and Referral Sources for their personal benefit and Battle Born's benefit; (d) preparing to compete, using Mission's resources, with Mission while still employed with and being paid by Mission; and (e) using Mission's Business Information and Trade Secrets to prepare to and to compete against Mission, thereby Mission of the value of the employment services for which they were hired and being paid.

179.    Mission has been damaged and continues to suffer and experience damages resulting from the Employee Defendants' breach of the implied covenant of good faith and fair dealing which is inherent to the Mission NDA in an amount to be determined at trial, plus applicable interest, late fees, attorney fees, and costs of collection.

180.    Mission is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to Mission.

**ELEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(Against all Defendants)**

181.    Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

182.    Many of the actions taken by Battle Born and by the Employee Defendants on Battle Born behalf, including but not limited to soliciting and hiring Mission's employees and soliciting Mission's Referral Sources and patients, were undertaken using Mission's Business Information and Trade Secrets. Some of these actions were taken while the Employee Defendants were still employed and being paid by Mission.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

183.    Defendants knew that Mission's Business Information and Trade Secrets was to be accessed and utilized by the Employee Defendants for the exclusive benefit of Mission. The Employee Defendants nonetheless misappropriated such information for their own use and benefit and for the use and benefit of Battle Born.

184.    Defendants retained the benefit of the information received, and each of them, have therefore been unjustly enriched by Mission's work and effort in developing, enhancing and implementing the Business Information and Trade Secrets benefit of Mission's Business Information and Trade Secrets, and their misappropriation of said information for their own benefit, either directly or indirectly, against basic principles of justice equity and good conscience.

185.    Mission is entitled to damages for Defendants unjust enrichment in an amount to be proven at trial.

186.    Mission is entitled to injunctive relief against Defendants to prevent further damage and harm to Mission.

### TWELFTH CAUSE OF ACTION
**(Conspiracy)**
**(Against the Employee Defendants)**

187.    Plaintiffs hereby repeat, reallege and incorporate all preceding paragraphs of this Complaint as though fully set forth herein.

188.    The Employee Defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Mission.

189.    Upon information and belief, the Employee Defendants, in concert with other individual, planned and agreed to commit the acts underlying the several Causes of Action stated herein including without limitation to access, use, disclose, publish, or copy the Business Information and Trade Secrets for a purpose other than a Mission Business-related purpose, including surreptitiously using the Business Information and Trade Secrets for the benefit of a competing home health agency, to wrongfully recruit employees to work for Battle Born, and

to and inappropriately solicit Referral Sources and patients to change service providers.

190.    Mission has been damaged as a result of the Employee Defendants' actions in an amount to be proven at trial.

191.    Because the Employee Defendants' actions were willful, fraudulent, malicious and intentional, and designed to gain additional unwarranted benefit from this interference, Mission is entitled to an award of punitive and exemplary damages in an amount to be proven at trial.

192.    Mission is entitled to injunctive relief against the Employee Defendants to prevent further damage and harm to Mission.

### SIXTH CLAIM FOR RELIEF
**(Breach of Fiduciary Duty)**
**(Against the Employee Defendants)**

193.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs by reference, as though fully set forth herein.

194.    The Employee Defendants were each employees of Mission until their employment was terminated.

195.    As an employee of Plaintiff, each of the Employee Defendants owed Mission a fiduciary duty of loyalty. The duty requires, among other things, that a fiduciary act in the best interests of his employer, put his employer's interests over his own, not take advantage of business opportunities that belong to the employer, not steal the employer's confidential information, and be truthful to the employer.

196.    The Employee Defendants breached the fiduciary duties each owed to Plaintiff by, among other things:

a.    Competing with Mission through the formation, launch, and operation of Battle Born while still employed by Mission;

b.    Accepting employment with a direct competitor and working in its behalf and to the detriment of Mission;

c.    Soliciting Mission's employees and contractors to work for Battle Born while

32

employed by Mission;

d.     Concealing and failing to disclose their involvement with a competing company while they were still employed by Mission; and

e.     Utilizing and improperly disclosing Mission's Business Information and Trade Secrets for their own benefit and for the benefit of Battle Born.

f.     Acting in other ways described herein which were not in the best interest of Mission.

197.     The Employee Defendants' actions were fraudulent and done in bad faith and with actual malice to Mission.

198.     As a direct and proximate result of the Employee Defendants' actions, Mission has suffered damages, including but not limited to, compensatory, consequential, special damages in the form of attorneys' fees, and punitive damages, in an amount to be determined at trial.

199.     As a direct and proximate result of the Employee Defendants' actions and conduct, Mission has been forced to retain the services of an attorney to prosecute this action and, therefore, Mission is entitled to reasonable attorney's fees, costs and interest as damages in this action pursuant to the agreements and Nevada law.

## SIXTH CLAIM FOR RELIEF
### (Intentional Interference with Contractual Relations)
### (Against all Defendants)

200.     Plaintiffs repeat and reallege the allegations of all preceding paragraphs by reference, as though fully set forth herein.

201.     Mission had existing contractual relationships with several employees and patients in the health care injury.

202.     The Employee Defendants and, as a result, Battle Born knew of Mission's existing contractual relationships.

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134

203.    The Employee Defendants and, as a result, Battle Born took Mission's Business Information and Trade Secrets and utilized it, intentionally, to interfere with Mission's business, employment relationships, and relationships with its Referral Sources.

204.    Defendants' use of Business Information and Trade Secrets to enable their interference was independently tortious and unlawful.

205.    Defendants' interference with Mission's current business relationships was the proximate cause of Mission's damages within the jurisdictional limitations of this Court.

206.    Mission seeks to recover lost profits, actual damages, and damages for lost benefits of each and every lost contract at issue.

207.    Mission has been damaged as a result of Defendants' actions in an amount to be determined at trial.

208.    Because Defendants' interference was willful, fraudulent, malicious and intentional, and designed to gain additional unwarranted benefit from the interference, Mission is entitled to an award of punitive and exemplary damages in excess of $10,000.00.

209.    It has been necessary for Mission to retain the services of an attorney to prosecute this action, and Mission is entitled to an award of reasonable attorneys' fees and costs in connection therewith.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs hereby respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiffs:

a.    For an award of compensatory, actual, and special damages;

b.    For an award of exemplary or punitive damages;

c.    For an accounting all gains, profits, and advantages derived by Defendants as a result of their misappropriation and improper use of Mission's Business Information and Trade Secrets;

d.      For an injunction enjoining Defendants and their affiliates from (i) accessing, disseminating or otherwise using the Business Information and Trade Secrets, and requiring them to return to Mission any such information in their possession; (ii) from using the Business Information or Trade Secrets for the purposes of accessing or contacting any Referral Sources for the purposes of causing them to terminate or lessen their relationship with Mission; and (iii) from using the Business Information or Trade Secrets for the purposes of soliciting and/or contacting Mission employees with the intent or purpose of having them leave or lessen their employment with Mission or to entice any Mission employees to be employed by for Defendants or any of their affiliates simultaneously with their employment with Mission;

e.      For an award of restitution;

f.      For an award of prejudgment and post-judgment interest until the judgment is paid in full;

g.      For an award of attorney fees and costs as allowed by law; and

h.      For such other and further relief as the Court deems just and proper.

DATED           July 25, 2022.

HOLLAND & HART LLP

/s/ Sydney R. Gambee
Sydney R. Gambee
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
Attorneys for Plaintiffs

HOLLAND & HART LLP
9555 HILLWOOD DRIVE, 2ND FLOOR
LAS VEGAS, NV 89134