UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MISSION HEALTHCARE SERVICES, LLC, a California limited liability company; and HEALTHY LIVING AT HOME–CARSON CITY, LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>BATTLE BORN HOME HEALTH, LLC, a Nevada limited liability company; JESSICA CONNANT (CRISP), an individual; ANGEL VASQUEZ BARNES, an individual; and JOSEPH BARNES, an individual,<br><br>Defendants. | Case No. 3:22-cv-00333-LRH-CLB<br><br>ORDER |

Before the Court are two motions to dismiss: one filed by Defendants Battle Born Home Health, LLC ("BBHH") and Jessica Connant (Crisp) ("Connant-Crisp") (collectively, "Battle Born") (ECF No. 19), and one filed by Defendants Angel Vasquez Barnes and Joseph Barnes (collectively, "Barnes") (ECF No. 25). Battle Born's motion is alternatively pled as a Motion for More Definite Statement. *See* ECF No. 19. Plaintiffs Mission Healthcare Services, LLC ("MHS") and Healthy Living at Home – Carson City, LLC ("HLH Carson City") (collectively, "Mission") filed a combined opposition response to the two motions. ECF No. 34. Battle Born and Barnes separately replied to Mission's combined opposition response. ECF Nos. 39, 42. Also before the Court is Mission's Motion for Leave to File Excess Pages as to the combined opposition response it filed on November 11, 2022. ECF No. 33. Good cause appearing, the Court grants Mission's motion to file excess pages *nunc pro tunc*. On July 14, 2023, Mission and Barnes filed a stipulation

1

to dismiss all claims asserted against Barnes without prejudice. ECF No. 76. The Court granted the stipulation on July 17, 2023. ECF No. 77. As a result of the Court's order granting the stipulation, the Court denies Barnes' motion to dismiss as moot. For the reasons articulated herein, the Court denies Battle Born's motion.

I.    **BACKGROUND**

This matter primarily, but not exclusively, involves misappropriation of trade secrets and breach of contract claims that stem from the alleged actions of three former Mission employees. Since the filing of the Complaint, Mission has dismissed all claims against Angel Vasquez Barnes and Joshua Barnes, two of the three former Mission employees at issue. ECF No. 77. Therefore, the only former Mission employee considered for purposes of the Complaint, the pending motion, and its responsive briefings is Connant-Crisp.[1]

MHS is a California limited liability company with its principal place of business in San Diego, California. ECF No. 1 at 2.  MHS is in the business of providing home health and hospice services throughout several western states including Arizona, California, Idaho, Nevada, Oregon, Washington, and Utah. *Id*. at 3. The services MHS offers include skilled nursing, physical therapy, occupational therapy, speech therapy, home health aides, medical social workers, end of life care and hospice. *Id*. HLH Carson City is a Nevada limited liability company with its principal place of business in Carson City, Nevada. *Id*. at 2. HLH Carson City provides health services to the residents of Northern Nevada. *Id*. at 3. In 2021, MHS acquired HLH Carson City including its assets, liabilities, contracts, and employees. *Id*. at 3. BBHH is a Nevada limited liability company with its principal place of business in Carson City, Nevada. *Id*. at 2. According to Mission, BBHH

---

[1] The Court notes that Mission has pled most of its causes of action against Connant-Crisp, Angel Vasquez Barnes, and Joshua Barnes as the "Employee Defendants." *See generally*, ECF No. 1. Moreover, in its combined opposition response, Mission continuously refers to all three "Employee Defendants" when responding to Battle Born's arguments and offering new arguments. *See generally*, ECF No. 34. Because Mission has since dismissed Angel Vasquez Barnes and Joshua Barnes from this action, the Court was required to sift through and interpret Mission's "Employee Defendant" arguments as actually being against only Connant-Crisp. Thus, for the purposes of this Order, all of Mission's references to the "Employee Defendants" are interpreted to mean only Connant-Crisp.

2

is a new healthcare company offering similar home health and hospice services throughout Carson City, Minden, Gardnerville, and Dayton, Nevada. *Id*. at 6.

Connant-Crisp began working for HLH Carson City as an Administrator on July 7, 2016. *Id*. at 12. According to Mission, Connant-Crisp signed different agreements as part of her employment with HLH Carson City and, subsequently, Mission including: the Employee Acknowledgment and Receipt of Healthy Living at Home Handbook (the "HLH Carson City Handbook Acknowledgment"), the Healthy Living Network Employee Handbook (the "HLH Carson City Handbook"), the Non-Disclosure and Assignment of Inventions Agreement (the "HLH Carson City NDA"), the Code of Conduct (the "HLH Carson City Code of Conduct"), and the Non-Disclosure and Confidentiality Agreement with Mission (the "Mission NDA"). *Id*. at 8, 12. Mission claims that these agreements contractually obligated Connant-Crisp in different ways. Generally, Mission alleges that while Connant-Crisp was employed by Mission she (1) conspired to form and operate BBHH using Mission's trade secrets and confidential business information, and (2) solicited and hired Mission employees, Referral Sources, and patients to BBHH. *Id*. at 12, 14. Upon discovery, Mission terminated Connant-Crisp; her final day of employment was January 19, 2022. *Id*. at 12, 14.

On July 25, 2022, Mission filed its Complaint against BBHH and Connant-Crisp in this Court. *Id*. at 1. The Complaint alleges fourteen causes of action, some against BBHH and Connant-Crisp, and others solely against Connant-Crisp: (1) state misappropriation of trade secrets pursuant to Nev. Rev. Stat. §§ 600A.010 *et seq*., against BBHH and Connant-Crisp; (2) federal misappropriation of trade secrets pursuant to 18 U.S.C. §§ 1836 *et seq*., against BBHH and Connant-Crisp; (3) breach of contract as to the HLH Carson City Handbook, against Connant-Crisp; (4) breach of the covenant of good faith and fair dealing as to the HLH Carson City Handbook, against Connant-Crisp; (5) breach of contract as to the HLH Carson City NDA, against Connant-Crisp; (6) breach of the covenant of good faith and fair dealing as to the HLH Carson City NDA, against Connant-Crisp; (7) breach of contract as to the HLH Carson City Code of Conduct, against Connant-Crisp; (8) breach of the covenant of good faith and fair dealing as to the HLH Carson City Code of Conduct, against Connant-Crisp; (9) breach of contract as to the Mission

NDA, against Connant-Crisp; (10) breach of the covenant of good faith and fair dealing as to the Mission NDA, against Connant-Crisp; (11) unjust enrichment, against BBHH and Connant-Crisp; (12) conspiracy, against Connant-Crisp; (13) breach of fiduciary duty, against Connant-Crisp; and (14) intentional interference with contractual relations, against BBHH and Connant-Crisp.[2] *Id*. at 16–34. On October 3, 2022, Battle Born filed its Motion to Dismiss (ECF No. 19) which is the subject of this Order. The motion is addressed below and, when possible, similar claims are addressed together.

## II.   LEGAL STANDARD

A party may seek the dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, enough facts must be pled "to state a claim to relief that [was] plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The plausibility standard requires the claimant to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678–79. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a [claim] to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

---

[2] The Court notes that Mission's Complaint incorrectly titles its thirteenth cause of action for breach of fiduciary duty and its fourteenth cause of action for intentional interference with contractual relations as its "SIXTH CLAIM FOR RELIEF." ECF No. 1 at 32, 33. For clarity, the Court will refer to these causes of action as Mission's thirteenth and fourteenth causes of action, respectively, in this Order and for the remainder of litigation.

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels—Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations and citations omitted). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

### III. DISCUSSION

#### A. Mission's First and Second Causes of Action

In its Complaint, Mission's first and second causes of action are against BBHH and Connant-Crisp for state and federal misappropriation of trade secrets. ECF No. 1 at 16–20. In its motion, Battle Born argues that Mission's trade secret misappropriation claims should be dismissed for similar reasons, including Mission's failure to (1) identify existing trade secrets, and (2) allege how BBHH and Connant-Crisp misappropriated the trade secrets through use, disclosure, or nondisclosure. ECF No. 19 at 5–7. In response, Mission claims that the Complaint adequately identifies existing trade secrets and alleges how BBHH and Connant-Crisp misused them to solicit Mission's customers, employees, and Referral Sources. ECF No. 34 at 24. Mission further claims that it is not required to publicly plead the specifics of its trade secrets at this stage of litigation. *Id*. at 20, 21. In reply, Battle Born alleges that Mission has failed to show how its trade secrets are beyond general knowledge of the trade or of special persons who are skilled in the trade. ECF No. 39 at 3. Battle Born also elaborates that Mission's failure to identify its trade secrets stems from the long non-exclusive list of possible trade secrets it provides which does not meet the particularity standard required to identify trade secrets. *Id*. at 4.

State and federal law define and require similar elements for trade secret misappropriation claims. In Nevada, a "trade secret" is defined as:

> information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that: (1) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Nev. Rev. Stat. § 600A.030(5). Nevada law requires a plaintiff bringing a trade secret misappropriation claim to demonstrate the following: "(1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Frantz v. Johnson*, 999 P.2d 351, 358 (2000) (citations omitted); *see also* Nev. Rev. Stat. §§ 600A. *et seq*.

Federal statutory law defines a "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3). In order to state a claim for trade secret misappropriation under federal law, a plaintiff must allege: (1) it possessed a valuable trade secret; (2) the defendant misappropriated the trade secret through unlawful acquisition, use, or disclosure of the trade secret; and (3) the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose. *See Physician's Surrogacy, Inc. v. German*, Case No. 17-cv-718-MMA, 2018 U.S. Dist. LEXIS 16261 (S.D. Cal. Jan. 31, 2018); *see also Switch Ltd. v. Fairfax*, Case No. 2:17-cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818 (D. Nev. Aug. 30, 2018); 18 U.S.C. § 1839.

Under these frameworks, the Court finds that Mission has adequately alleged its claims for state and federal misappropriation of trade secrets. Although it may do so in more general terms, Mission has claimed that its trade secrets are "techniques, strategies and information about Referral Sources, employees, and patients." ECF No. 1 at 4. Mission further identifies its trade secrets to

include, but not be limited to, "data, formulas and processes related to strategic alliances and relationships with vendors, Referral Sources, patients, employees and third parties, and including without limitation, confidential techniques, strategies, and information about Referral Sources, employees, and patients." *Id*. at 7. Finally, Mission also alleges that its trade secrets include "information concerning project development and production, marketing plans and strategy, business plans and projections, finances, operations, billing methods and client and contact lists or other subject matter pertaining to any business of [Mission] or any of its clients as defined above." *Id*. at 10. The trade secrets that Mission identifies it possesses fall within the state and federal statutory definitions of "trade secret."

More importantly, Mission provides facts that suggest it possesses valuable trade secrets, that Connant-Crisp allegedly used and disclosed those trade secrets to third parties, and that her alleged use or disclosure was wrongful because it was made in breach of her employment obligations and her contractual duty not to disclose. Mission also adequately pleads that its trade secrets are not generally known to the public, that they have independent economic value, and that they are safeguarded and protected in order to gain and maintain a competitive advantage. Thus, Mission has met the plausibility threshold for its two trade secret misappropriation claims. For these reasons, the Court finds that Mission has adequately pled its trade secret misappropriation claims. Mission has offered sufficient facts in the Complaint that suggest these claims are plausible. Accordingly, the Court denies Battle Born's motion to dismiss Mission's first and second causes of action for state and federal misappropriation of trade secrets.

**B.      Mission's Third, Fifth, Seventh, and Ninth Causes of Action**

Mission alleges four breach of contract claims against Connant-Crisp: Mission's third cause of action is for breach of the HLH Carson City Handbook; Mission's fifth cause of action is for breach of the HLH Carson City NDA; Mission's seventh cause of action is for breach of the HLH Carson City Code of Conduct; and Mission's ninth cause of action is for breach of the Mission NDA. ECF No. 1 at 20–29. Each of these alleged contracts and the parties' arguments as to dismissal are briefly described below.

7

In its Complaint, Mission claims that by signing the HLH Carson City Handbook (the "Handbook") on July 17, 2018, Connant-Crisp acknowledged she would have access to Mission's confidential information and that she had a duty to not disclose it. *Id*. at 8, 9. Mission also claims that the Handbook contractually obligated Connant-Crisp to treat any learned information as private and privileged, even after her employment with Mission ended. *Id*. at 9. According to Mission, the Handbook also prohibited Connant-Crisp from soliciting employees. *Id* at 21. In its motion, Battle Born contends that the Handbook is not a contract. ECF No. 19 at 7. Battle Born further alleges that Mission merely recites the elements for breach of contract and offers no facts showing breach or damages. *Id*. In response, Mission argues that it adequately pled all the elements of a valid contract and breach of contract as to the Handbook. ECF No 34 at 25.

In its Complaint, Mission claims that Connant-Crisp signed the HLH Carson City NDA on July 17, 2018, and the Mission NDA on November 19, 2021 (collectively, the "NDAs"). ECF No. 1 at 10–12. According to Mission, the NDAs contractually obligated Connant-Crisp in similar ways: Connant-Crisp was to (1) hold Mission's trade secrets and confidential business information in strict confidence; (2) not disclose Mission's trade secrets and confidential business information; and (3) not use Mission's trade secrets and confidential business information for the benefit of anyone or any company other than Mission. *Id*. at 10, 12. Mission further claims that the NDAs obligated Connant-Crisp to return certain items to Mission after her employment ended. *Id*. As to the HLH Carson City NDA, Mission also argues that it obligated Connant-Crisp not to solicit or interfere with Mission's business relationships, employees, and affiliates during and after employment. *Id*. at 11. In its motion, Battle Born argues that Mission only restates the elements for breach of contract claims and provides no facts as to breach and damages of the NDAs. ECF No. 19 at 8, 9. In response, Mission argues that it adequately pled the NDAs are contracts, that Connant-Crisp breached the NDAs, and that Mission was damaged as a result. ECF No. 34 at 27, 28. In reply, Battle Born argues that Mission offers only labels and conclusions, not facts, as to breach. ECF No. 39 at 6, 7.

In its Complaint, Mission alleges that by signing the HLH Carson City Code of Conduct (the "Code") on July 17, 2018, Connant-Crisp agreed she would: (1) not obtain any personal

benefit by virtue of her employment with Mission; (2) disclose any financial and ownership interest she had with existing customers, vendors, or competitors; (3) not use HLH Carson City's trade secrets or confidential business information for her benefit or the benefit of another; and (4) report any known employee violation of the Code. ECF No. 1 at 11, 12. In its motion, Battle Born argues that the Code is not a contract. ECF No. 19 at 9. Battle Born also argues that Mission provides no facts from which breach could be inferred. *Id*. In response, Mission argues that the Code is a valid contract and that all elements of breach of contract were adequately pled in the Complaint. ECF No. 34 at 27, 28. In reply, Battle Born reiterates that the Code is not a contract, and that Mission has not sufficiently shown a breach of contract is plausible. ECF No. 39 at 6–8.

In Nevada, a plaintiff must establish the following to prevail on a claim for breach of contract: "(1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages." *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transportation Comm'n of Washoe Cnty.*, 138 Nev. Adv. Op. 72, 522 P.3d 453, 458 (Nev. App. 2022) (citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006)). "Absent a contract, there can be no claim for breach of contract." *Rouse v. Wal-Mart Stores, Inc.*, 297 F. App'x 608, 609 (9th Cir. 2008) (citation omitted). A valid and enforceable contract exists where there is "an offer and acceptance, meeting of the minds, and consideration." *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev. 371, 378, (2012) (citing and quoting *May v. Anderson*, 121 Nev. 668, 672 (2005)).

The Court finds that Mission has adequately pled breach of contract claims as to the Handbook, the NDAs, and the Code. First, Mission sufficiently alleges that the Handbook, the NDAs, and the Code are valid contracts and, alternatively, it is certainly plausible that each of these alleged contracts were incorporated into Connant-Crisp's general employment contract. Mission provides facts that support the existence of contracts here such as the specific dates Connant-Crisp executed the agreements by signing them as part of her employment with Mission, and her acknowledgement that she be bound by each of the agreements' terms and obligations. Furthermore, Mission argues that Connant-Crisp's continued employment provided sufficient consideration for the formation of each contract or its incorporation into a general employment

contract. Under the facts that Mission presents in its Complaint, it is plausible that the Handbook, the NDAs, and the Code constitute valid contracts or extensions of her employment contract.[3]

The parties do not dispute whether Mission adequately alleges that it performed its duties under the alleged contracts. However, the parties do contest whether Mission has adequately pled breach. As to the issue of breach, Battle Born argues that Mission has failed to plausibly plead breach on each alleged contractual claim due to its failure to adequately plead its trade secrets misappropriation claims. ECF No. 19 at 7. According to Battle Born, if Mission has failed to adequately plead its misappropriation of trade secrets claims then Mission cannot turn around and argue that breach takes the form of inadequately pled misappropriation. *Id*. In this Order, the Court found that Mission adequately pled its trade secret misappropriation claims to survive a motion to dismiss. *See* Mission's first and second causes of action discussion *supra* Section III.A. Moreover, the Complaint also alleges that Connant-Crisp breached the four alleged contracts by disclosing Mission's confidential business information. ECF No. 1 at 24, 29. Battle Born's breach argument is not persuasive because (1) disclosing confidential business information is different from misappropriating trade secrets, and (2) Mission has not failed to allege trade secret misappropriation as Battle Born suggests. Thus, Mission has plausibly pled that Connant-Crisp breached the Handbook, the NDAs, and the Code when she allegedly misappropriated its trade secrets and disclosed and used Mission's confidential business information. Finally, the Court also finds that Mission provides sufficient facts as to damages. As to damages, Mission claims that it was irreparably harmed because of Connant-Crisp's breach through the loss of its confidential and proprietary information and the solicitation of its Referral Sources, patients, and employees.

Taking all allegations in the Complaint as true, Mission has plausibly pled breach of contract claims as to the Handbook, the NDAs, and the Code. Accordingly, the Court denies Battle Born's motion to dismiss Mission's third, fifth, seventh, and ninth causes of action for breach of contract.

---

[3] Mission and Battle Born dedicate a good portion of their motion briefings debating whether Connant-Crisp's continued employment is sufficient consideration for the formation of the contracts in question or incorporation into a pre-existing employment contract. The Court finds that this issue is not appropriate for consideration at the motion to dismiss stage of litigation.

### C. Mission's Fourth, Sixth, Eighth, and Tenth Causes of Action

Mission alleges four breach of the covenant of good faith and fair dealing claims against Connant-Crisp: Mission's fourth cause of action is for breach of the covenant as to the Handbook; Mission's sixth cause of action is for breach of the covenant as to the HLH Carson City NDA; Mission's eighth cause of action is for breach of the covenant as to the Code; and Mission's tenth cause of action is for breach of the covenant as to the Mission NDA. ECF No. 1 at 22–30. Each of these alleged covenants and the parties' arguments as to dismissal are briefly described below.

In its Complaint, Mission alleges that the covenant of good faith and fair dealing arising out of the Handbook required Connant-Crisp to act in a manner that would build up HLH Carson City's business and protect its economic advantages. ECF No. 1 at 22. Battle Born argues that Mission provides no facts from which breach of the covenant could be inferred because the Handbook is not a valid contract. ECF No. 19 at 8. In response, Mission argues Handbook is a valid contract and that Connant-Crisp acted in bad faith when she allegedly misappropriated its trade secrets and disclosed its confidential business information while she was an employee. ECF No. 34 at 29, 30.

In its Complaint, Mission claims that the covenants arising out of the NDAs and the Code required Connant-Crisp to establish a long-term employee base, increase referrals, fight off competition, and protect HLH Carson City and Mission's positions in the marketplace. ECF No. 1 at 25, 27, 29. In its motion, Battle Born argues that these three causes of action should be dismissed for similar reasons. First, Battle Born argues that Mission fails to provide facts as to breach of the covenant and damages. ECF No. 19 at 8, 9. As to the Code, Battle Born offers an additional argument that the Code is not a contract and thus, no cause of action for breach of the covenant is viable. *Id*. at 9. In response, Mission argues that it has adequately alleged the existence of these three contracts and, even if the Court were to find the opposite, that an employment relationship between Mission and Connant-Crisp existed giving rise to these good faith and fair dealing claims. ECF No. 29 at 34.

A claim for breach of the implied covenant of good faith and fair dealing is established where a plaintiff shows: "(1) the existence of a contract between the parties; (2) that the defendant

breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied." *H&H Pharms., LLC v. Chattem Chemicals, Inc*., Case No. 2-16-CV-02148-GMN-VCF, 2020 WL 376648, at *6 (D. Nev. Jan. 23, 2020) (citations omitted). In Nevada, every contract imposes the duty of good faith and fair dealing upon the contracting parties. *See APCO Constr., Inc. v. Helix Elec. of Nevada, LLC*, 138 Nev. Adv. Op. 31, 53 (2022) (citing *A.C. Shaw Constr., Inc. v. Washoe County*, 105 Nev. 913, 914 (1989); *see also Hilton Hotels*, 109 Nev. at 1046. Therefore, a contract must exist for a breach of the implied duty of good faith and fair dealing claim just as one must exist for a breach of contract claim. *See Rouse,* 297 F. App'x at 609 n.1 (affirming the district court's grant of summary judgment for defendant on plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims because there was no valid contract).

The Court finds that Mission adequately pled its claims for breach of the covenant of good faith and fair dealing. First, in this Order, the Court found that the Handbook, the NDAs, and the Code are plausibly contracts or alternatively incorporated into Connant-Crisp's general employment contract. *See* Mission's third, fifth, seventh, and ninth causes of action discussion *supra* Section III.B. Therefore, Mission has adequately pled contracts existed between the parties and that covenants of good faith and fair dealing were imparted on Connant-Crisp. *See Consol. Generator-Nevada, Inc. v. Cummins Engine Co*., 114 Nev. 1304, 1311 (1998) ("An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law").

Moreover, Mission adequately pled that Connant-Crisp breached those covenants by acting in a manner unfaithful to the purposes and obligations of the Handbook, the NDAs and the Code. Connant-Crisp's alleged breaches via misappropriation and disclosure go against the spirit of the four agreements because she allegedly used Mission's trade secrets and confidential business information for her own benefit and the benefit of BBHH, entities other than her employer. Mission also offers facts that suggest Connant-Crisp failed to notify Mission of her own non-compliance with the agreements and her alleged personal and financial interests in BBHH.

Finally, Mission also plausibly pled that its own expectations under the Handbook, the NDAs, and the Code were denied. For example, Mission pleads that there is an implied covenant

in all Mission-employee contracts including the Mission NDA that the employee act in a manner consistent with the parties' intent so Mission can realize the benefit of its bargain including building Mission up, increasing business, fighting off competition, and protecting Mission's position in the market. ECF No. 1 at 29. Connant-Crisp's alleged recruitment of Mission employees away from Mission is a plausible denial of Mission's expectations under the Mission NDA. The Complaint offers other facts that plausibly suggest Mission's expectations were denied under the Handbook, the HLH Carson City NDA, and the Code as well.

For these reasons, the Court finds that Mission has plausibly pled its breach of the covenant of good faith and fair dealing claims as to the Handbook, the NDAs, and the Code. Accordingly, the Court denies Battle Born's motion to dismiss Mission's fourth, sixth, eighth, and tenth causes of action for breach of the covenant.

### D. Mission's Eleventh Cause of Action

In its Complaint, Mission's eleventh cause of action alleges that Connant-Crisp and BBHH were unjustly enriched due the benefit they retained through alleged trade secret misappropriation and confidential business information disclosure. ECF No. 1 at 30, 31. In its motion, Battle Born alleges that Mission has no claim for unjust enrichment because Mission failed to provide a sufficient description of the property that Connant-Crisp and BBHH unjustly retained, and because all Mission's other causes of action are based on the existence of contracts and a cause of action for unjust enrichment is unavailable when there is a contract. ECF No. 19 at 10. In response, Mission argues that Federal Rule of Civil Procedure 8 allows Mission to state as many separate claims for relief as it desires, regardless of consistency. ECF No. 34 at 31.

"Unjust enrichment occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *Soebbing v. Carpet Barn, Inc.*, 109 Nev. 78, 82 (1993) (citing *Unionamerica Mortgage & Equity Trust v. McDonald*, 97 Nev. 210, 212 (1981)). Unjust enrichment occurs where "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment

of the value thereof." *Certified Fire*, 128 Nev. at 381 (citations and quotations omitted). A plaintiff bringing an unjust enrichment claim "must establish each element of unjust enrichment." *Id.*

The Court finds that Mission plausibly pled each element of unjust enrichment to survive a motion to dismiss. According to the Complaint, Connant-Crisp had access to and a duty to keep confidential Mission's trade secrets and confidential business information due to her position and her duties of employment. Mission alleges that she disclosed and used those trade secrets and that information for her benefit and the benefit of BBHH while employed by and being paid by Mission. More specifically, Mission claims that Connant-Crisp and BBHH appreciated this benefit when it allegedly used the trade secrets and information to launch BBHH and to solicit and hire Mission's patients, employees, and Referral Sources. Because Connant-Crisp allegedly used Mission's trade secrets and business information despite alleged contractual obligations that such information only be used for Mission's benefit, the Court finds that Mission plausibly pled that it would be inequitable for Connant-Crisp and BBHH to retain that benefit without repayment.

Battle Born argues that Mission's unjust enrichment claim is precluded by Nev. Rev. Stat. §§ 600A, *et seq*. ("UTSA"), because the claim is based on Connant-Crisp's alleged misappropriation of trade secrets and UTSA displaces conflicting tort, restitutionary, and other civil remedies for trade secret misappropriation.[4] ECF No. 19 at 10, 11. Mission argues that these claims are not precluded because UTSA does not provide a blanket preemption for all claims arising out of factual circumstances that involve trade secrets. ECF No. 34 at 31. Furthermore, Mission argues that it has adequately pled theories apart from its trade secret misappropriation theory on which it bases its unjust enrichment claim. *Id*.

While Battle Born is correct that UTSA displaces conflicting tort, restitutionary, and other civil remedies based on a single factual episode of misappropriation of trade secrets, the Court finds that Mission has offered additional theories apart from trade secret misappropriation on which this claim rests. In any event, the Court finds that more factual development is needed here

---

[4] Battle Born offers the same UTSA argument for the displacement and dismissal of Mission's twelfth claim for conspiracy, thirteenth claim for breach of fiduciary duty, and fourteenth claim for intentional interference with contractual relations. As such, the Court's analysis of and findings as to UTSA and Mission's unjust enrichment claim are applicable to its other claims.

before precluding claims under UTSA. It is majorly unknown if Mission's trade secret misappropriation claims and its unjust enrichment claim truly conflict with one another. Both are viable theories of recovery, but currently there is only potential conflict between them. Discovery in this Case will reveal the extent to which these claims actually conflict and whether they are based entirely on the same misappropriation theory under the same misappropriation facts. *See* Nev. Rev. Stat. § 600A.090(1) ("[T]his chapter displaces *conflicting* tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret") (emphasis added). Currently, the Court is not well-positioned to determine the extent to which these claims conflict. Therefore, the Court will not use UTSA to displace Mission's unjust enrichment.

For these reasons, the Court finds that Mission has plausibly pled its claim for unjust enrichment. Accordingly, the Court denies Battle Born's motion to dismiss Mission's eleventh cause of action.

### E. Mission's Twelfth Cause of Action

In its Complaint, Mission's twelfth cause of action alleges conspiracy against Connant-Crisp. ECF No. 1 at 31. More specifically, Mission claims that Connant-Crisp planned and agreed to use, disclose, publish, or copy Mission's trade secrets and confidential business information for the benefit of BBHH. *Id*. In its motion, Battle Born argues that Mission failed to allege sufficient facts as to any agreement to conspire. ECF No. 19 at 11. Battle Born also reiterates its argument that this conspiracy claim is precluded under UTSA. *Id*. In response, Mission argues that it sufficiently alleged Connant-Crisp formed and carried out a plan to use Mission's trade secrets and confidential business information unlawfully and for BBHH's benefit. ECF No. 34 at 32. In reply, Battle Born argues that this claim should be dismissed because the "unlawful objective" pled by Mission is based on the other causes of actions in the Complaint that Mission has inadequately pled. ECF No. 39 at 10.

In Nevada, a "conspiracy" is defined as "an agreement between two or more persons for an unlawful purpose." *Washington v. State*, 132 Nev. 655, 663 (2016) (citation omitted). Moreover, an actionable conspiracy consists of "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming

another, and damage results from the act or acts." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 109 Nev. 1043, 1048 (1993) (citing and quoting *Sutherland v. Gross*, 105 Nev. 192, 196 (1989)).

The Court finds that Mission has plausibly pled conspiracy. The Complaint expressly alleges that Connant-Crisp and other individuals planned to "use, disclose, publish, or copy" Mission's trade secrets and confidential business information to harm Mission. Mission contends that the alleged plan was in violation of and in breach of the contractual obligations and duties that Connant-Crisp owed to Mission as a Mission employee, and by extension the law. Again, the Court finds that Mission offers adequate facts that support its damages argument. Moreover, for the reasons previously articulated, UTSA does not displace this viable theory of recovery because it is unknown whether these claims concretely conflict. *See* Mission's eleventh cause of action discussion *supra* Section III.D. For these reasons, the Court finds that Mission adequately pled conspiracy. Accordingly, the Court denies Battle Born's motion to dismiss Mission's twelfth cause of action for conspiracy.

### F. Mission's Thirteenth Cause of Action

In its Complaint, Mission's thirteenth cause of action alleges that Connant-Crisp owed Mission a fiduciary duty of loyalty to act in the Mission's best interest, not steal Mission's trade secrets and confidential business information, and not take advantage of business opportunities that belong to Mission. ECF No. 1 at 32. In its motion, Battle Born argues that Mission alleges no specific facts to show breach of duty or damages. ECF No. 19 at 12. Battle Born again argues that this claim is precluded under UTSA. *Id*. In response, Mission argues that employees owe fiduciary duties to their employers. ECF No. 34 at 33, 34. In reply, Battle Born argues that the Complaint provides "nothing more than legal conclusions" and that Mission only offers vague accusations of breach. ECF No. 39 at 11.

"A claim for breach of fiduciary duty customarily has three elements: (1) existence of a fiduciary duty, (2) breach of the duty, and (3) damages as a result of the breach." *Guzman v. Johnson*, 137 Nev. 126, 132 (2021). The Court finds that Mission has plausibly pled each required element for breach of fiduciary duty. First, Mission alleges that Connant-Crisp owed Mission a fiduciary duty of loyalty because of their shared employee-employer relationship. Second, Mission

offers six possible theories of breach including Connant-Crisp's alleged formation, launch, and operation of Battle Born while she was still employed by Mission. Third, Mission alleges that it suffered damages directly and proximately caused by the various theories of Connant-Crisp's breach. As to Battle Born's UTSA preclusion argument, the Court finds that this cause of action is not yet precluded under UTSA for similar reasons already stated herein. *See* Mission's eleventh cause of action discussion *supra* Section III.D. For these reasons, Mission has plausibly pled its thirteenth cause of action against Connant-Crisp for breach of fiduciary duty. Accordingly, the Court denies Battle Born's motion to dismiss Mission's thirteenth cause of action.

### G. Mission's Fourteenth Cause of Action

In its Complaint, Mission's fourteenth cause of action alleges that Connant-Crisp and BBHH intentionally interfered with its existing contractual business, employment, and Referral Source relationships. ECF No. 1 at 34. In its motion, Battle Born argues that Mission simply recites the elements of an intentional interference claim and offers no facts to suggest plausibility. ECF No. 19 at 12. Battle Born also argues this claim is precluded by UTSA. *Id*. Mission argues that it has sufficiently pled this cause of action. ECF No. 34 at 35.

To establish a claim for intentional interference with contractual relations, a plaintiff must show: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland*, 105 Nev. at 196 (citation omitted). The Court finds that Mission has adequately pled a cause of action for intentional interference with contractual relations. First, Mission states that it inherited all of HLH Carson City's business and employee contracts when it acquired the entity. Next, Mission pleads that Connant-Crisp and BBHH knew of these contracts, much like Connant-Crisp knew of the contracts she was a party to and those she learned of in her key administrative position. Third, it is entirely plausible that Connant-Crisp and BBHH intentionally acted to disrupt Mission's pre-existing contractual relationships, particularly the ones it had with the employees Connant-Crisp and BBHH attempted to solicit. For example, Mission alleges that Connant-Crisp specifically "spoke ill of Mission and discouraged employees and contractors from continuing employment with Mission." ECF No. 1

at 5. Fourth, Mission has plausibly pled that Connant-Crisp disrupted some of its pre-existing contracts such as those with its employees and contractors. Finally, Mission adequately pled damages resulting from Connant-Crisp and BBHH's interference such as lost profits and lost benefits from the interrupted contracts. As to Battle Born's UTSA preclusion claim, the Court finds that this cause of action is not precluded for similar reasons already stated herein. *See* Mission's eleventh cause of action discussion *supra* Section III.D.

For these reasons, Mission has plausibly pled its fourteenth cause of action against Connant-Crisp and BBHH for intentional interference with contractual relations. Accordingly, the Court denies Battle Born's motion to dismiss Mission's fourteenth cause of action.

## IV.    CONCLUSION

IT IS THEREFORE ORDERED that Battle Born's Motion to Dismiss (ECF No. 19) is **DENIED**.

IT IS FURTHER ORDERED that Barnes' Motion to Dismiss (ECF No. 25) is **DENIED as moot**.

IT IS FURTHER ORDERED that Mission's Motion for Leave to File Excess Pages as to the combined opposition response it filed on November 11, 2022 (ECF No. 33), is **GRANTED** *nunc pro tunc*.

IT IS SO ORDERED.

DATED this 25th day of August, 2023.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE